IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

**STATE OF NEW MEXICO,** *ex rel.*
**NATIONAL EDUCATION**
**ASSOCIATION OF NEW MEXICO,**
**INC., a domestic nonprofit corporation,**
**on behalf of the EDUCATIONAL**
**RETIREMENT BOARD and the STATE**
**INVESTMENT COUNCIL,**

        Plaintiff,

v.                          No. CIV 09-0730 BB/KBM

**AUSTIN CAPITAL MANAGEMENT**
**LTD.,**

        Defendant.

## MEMORANDUM OPINION

This matter comes before the Court for consideration of a motion to remand filed by the relator Plaintiff, National Education Association of New Mexico ("NEA"). [Doc. 14] The Court has reviewed the submissions of the parties and the relevant law. Based on this review, the motion to remand will be granted. Given this resolution, the Court will not rule on Defendant's motion to dismiss. [Doc. 13]

**Procedural History**

This is a *qui tam* action filed by NEA under New Mexico's Fraud Against Taxpayers Act ("FATA"), NMSA §§ 44-9-1 to -14. NEA filed the lawsuit in the First Judicial District Court of Santa Fe County, New Mexico, on behalf of the Educational Retirement Board ("ERB") and the State Investment Council ("SIC"). NEA filed the action to recover millions of dollars in investments allegedly lost by the ERB and the SIC due at least in part to alleged actions or inactions of Defendant. Defendant removed the lawsuit to this Court on the basis of diversity of

the parties, and then designated the case as a tag-along action in a proposed multi-district-litigation ("MDL") case in the Southern District of New York. [Doc. 4] NEA then filed the instant motion to remand, and also filed a motion with the MDL panel seeking to vacate the conditional transfer order that has been issued by that panel. The latter motion is scheduled to be addressed by the MDL panel at its next hearing session, November 19, 2009. As discussed below, however, this case must be remanded to state court and the Court therefore finds no reason to delay the case pending a decision by the MDL panel.

**Discussion**

NEA is the relator or *qui tam* plaintiff in this action and has brought the lawsuit in the name of the State of New Mexico, as the FATA requires. NMSA § 44-9-5(A). In addition, NEA brings the action on behalf of the ERB and the SIC, and alleges both entities are state agencies. Ordinarily, the presence of a state or state agency as a party to a lawsuit precludes any possibility that diversity jurisdiction will exist; it is settled law that neither a state nor an arm of a state is a "citizen" of any state, for purposes of the diversity-jurisdiction statute. *See Moor v. County of Alameda*, 411 U.S. 693, 717 (1973); *South Carolina Dep't of Disabilities and Special Needs v. Hoover Universal, Inc.*, 535 F.3d 300, 303 (4th Cir. 2008). NEA relies on this general rule in the motion to remand, contending that diversity jurisdiction does not exist in this case due to the presence of the State, the ERB, and the SIC in the action.

Defendant attempts to avoid the above-stated general rule by making two arguments. First, Defendant argues the State is not a party to this case because the State has not yet intervened in the action. Second, Defendant maintains neither the ERB nor the SIC are arms of the State, but both should instead be considered political subdivisions of the State. The Court addresses each of these arguments in turn.

It is true that under recent Supreme Court precedent the State, having up to this point declined to intervene in the case, is not considered an official party to the case, at least for purposes of the Federal Rules of Civil Procedure. *See U.S. ex rel. Eisenstein v. City of New*

*York*, 129 S.Ct. 2230, 2233-35 (2009) (in a *qui tam* case brought under the False Claims Act the United States government is not a "party" to the case if it has decided not to intervene). In *Eisenstein*, the relator argued the United States was a party to the case, which if true would have meant the deadline for filing an appeal would have been 60 days rather than the usual 30 days granted by the federal rules. The Supreme Court rejected this argument, holding that the United States is a "party" to a privately-filed *qui tam* action only if it intervenes in the lawsuit. *Eisenstein*, 129 S.Ct. at 2234.

*Eisenstein* is not dispositive of the issue presented in this case, however. In diversity-jurisdiction cases, the citizenship that matters is not that of the named parties; instead, courts have long looked to the citizenship of the real parties in interest. Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, 6A Fed. Prac. & Proc. Civ.2d § 1556; *Hann v. City of Clinton, Okl.,ex rel. Schuetter*, 131 F.2d 978, 981 (10th Cir. 1942)("In determining the question whether diversity of citizenship requisite to jurisdiction exists, a court looks to the citizenship of the real parties in interest; and where there is complete diversity between them, the presence of a nominal party with no real interest in the controversy will be disregarded."); *West Virginia ex rel. McGraw v. Minnesota Mining and Mfg. Co.*, 354 F.Supp.2d 660, 663-64 (S.D. W.Va. 2005). In this case, then, even though the State is not at this time a "party" to the lawsuit for purposes of the federal rules, the crucial question is whether it is merely a nominal or formal party or is actually a real party in interest. If the latter is the case, diversity jurisdiction does not exist and the case must be remanded.

In determining whether the State is a real party in interest in this *qui tam* action, the Court starts with the very case relied on by Defendant, the Supreme Court's *Eisenstein* opinion. In that case, the Supreme Court, while holding the government was not a party to the action, acknowledged that the United States would nevertheless be considered a real party in interest. *See Eisenstein*, 129 S.Ct. at 2235 (discussing petitioner's argument that the United States should be considered a party in all false-claims-act actions because it is a real party in interest in such

actions; distinguishing between the terms "party" as used by Congress in the rules of civil procedure, and "real party in interest;" holding that government's status as a real party in interest did not make it a "party" for purposes of the civil-procedure rules).  The status of the United States in the false-claims-act *qui tam* action at stake in *Eisenstein* was the same as the State's status in this litigation; both potentially stand to benefit financially from the *qui tam* lawsuit even if they have declined to intervene in the action.  Therefore, the Supreme Court's acknowledgment of the real-party-in-interest status of the United States in a *qui tam* lawsuit is persuasive authority regarding the State's status in this case.

In addition, other courts have held that a state is a real party in interest in cases where the state may or may not be a named party, but has some type of financial or regulatory interest in the lawsuit, even though the action is actually being prosecuted by a different person or entity.  *See, e.g., Bosse v. Pitts*, 455 F.Supp.2d 868 (W.D. Wis. 2006) (state's crime-victim-compensation program was real party in interest in plaintiff's civil lawsuit, because program had subrogation interest in plaintiff's potential recovery, to extent program had paid moneys to victim); *West Virginia ex rel. McGraw*, *supra*, 354 F.Supp.2d at 665 (state was real party in interest, because state potentially stood to recover hundreds of millions of dollars it had paid out for workers' medical care); *State of Colorado ex rel. Land Acquisition Comm'n v. American Mach. & Foundry Co.*, 143 F.Supp. 703 (D. Colo. 1956) (state was real party in interest to condemnation action brought by Commission, acting as agent of the state).  The State's position in this case is analogous to that of the various states in the above-cited cases.

Finally, the State meets the general requirements of a real party in interest as established by case law.  According to the *Eisenstein* opinion, which relied on Black's Law Dictionary's definition, a real party in interest is a person entitled under the substantive law to enforce the right sued upon, and who generally benefits from the action's final outcome.  The substantive law and the right sued upon in this case are established by the New Mexico statute, the FATA, which is the basis for the lawsuit.  Under that statute, the attorney general may intervene and take

over a lawsuit filed by a relator, which certainly means the State is entitled to enforce the right sued upon. NMSA § 44-9-5(D)(1). In addition, any monies recovered belong to the State, after the *qui tam* plaintiff receives its share; the remainder of the money is then returned to the agencies from which it was fraudulently taken, with any excess funds divided between the State's school fund (if civil penalties are recovered), the attorney general's office, and the general fund. NMSA 44-9-7(E).[1] In this case, therefore, the State could certainly benefit financially from the action's final outcome. This is sufficient to make the State a real party in interest. *See Eisenstein, supra; see also, e.g., West Virginia ex rel. McGraw*, *supra*, 354 F.Supp.2d at 665 (state is a real party in interest for diversity purposes if relief sought is that which enures to the state, and the judgment or decree, if for the plaintiff, will effectively operate in the state's favor).

Given the above determination that the State is a real party in interest in this case, it is not necessary to exhaustively address the other issue argued by the parties, which is whether the ERB and the SIC are arms of the state. Brief examination of that question, however, confirms the fact that no diversity jurisdiction exists in this case. Defendant has conceded that both the ERB and the SIC are real parties in interest. The only question remaining, therefore, is whether either or both entities should be considered arms of the state or, on the other hand, political subdivisions of the state. *See, e.g., Moor v. County of Alameda*, *supra*, 411 U.S. at 717 (political subdivision of a state is considered a "citizen" of the state for diversity purposes, while an arm of the state is not).

The parties agree that the test for arm-of-the-state status versus political-subdivision status is the same whether the purpose of the inquiry is to decide the diversity-jurisdiction issue or an Eleventh Amendment immunity question. For purposes of the latter inquiry, the Tenth

---

[1] Even after the defrauded agencies and the *qui tam* plaintiff are paid their shares of the recovery, it is possible that funds could remain to be divided between the general fund, the attorney general's office, and the school fund, because the FATA allows recovery of three times the actual losses suffered by the state. NMSA 44-9-3(C).

Circuit has developed a test similar to that employed by many other courts.  This test asks whether a judgment against the particular entity would be payable by the state, and then examines the following additional factors: (1) the characterization of the governmental unit under state law; (2) the guidance and control exercised by the state over the governmental unit; (3) the degree of state funding received; and (4) the governmental unit's ability to issue bonds and levy taxes on its own behalf.  *See Sturdevant v. Paulsen*, 218 F.3d 1160, 1165-66 (10th Cir. 2000).   Under this test, there is no question that both the SIC and the ERB are arms of the State rather than independent political subdivisions.  The SIC, for example, is composed of the following individuals: the governor, the state treasurer, the state land commissioner, the state secretary of finance and administration, three public members appointed by the governor, the state investment officer, and the chief financial officer of a state institution of higher education, who is also appointed by the governor.  NMSA § 6-8-2.  Thus, all members of the SIC are either high-ranking officials of the State, are appointed by the governor, or (in the case of the investment officer) are employed by the State.  Furthermore, the New Mexico Legislature has by statute established the investment rules under which the SIC is allowed to operate, as well as the interaction that is required between the SIC and the state investment officer.  §§ 6-8-7, 6-8-9.  Finally, the funds invested by the SIC are not derived from taxes or bonds levied or issued by the SIC; instead, they are funds belonging to the State's various permanent funds.  §§ 6-8-18, 6-8-19.  Obviously, the SIC in no way functions independently of the State to the degree required by the applicable test.

   Similarly, the ERB is composed of the state secretary of education, the state treasurer, two individuals appointed by the governor, and three individuals elected to their positions, which means the majority of the ERB consists of high officials of the State or individuals appointed by the governor.  NMSA § 22-11-3.  Also, the Legislature has established statutory requirements controlling the number of times per year the ERB must meet, whether a quorum is required for the transaction of business, and the employment of expert advisors by the ERB.  §§ 22-11-4 to -

9. Significantly, the state treasurer is the custodian of the educational retirement fund that is administered by the ERB, and disbursements from the fund are made through the state's department of finance and administration. §§ 22-11-11, 22-11-12. The ERB, like the SIC, is under the State's control to such an extent that it cannot be considered a political subdivision of the State. *See, e.g., Ernst v. Rising*, 427 F.3d 351, 360-61 (6th Cir. 2005) (holding that Michigan's retirement system for state-court judges is an arm of the state, due to fact that the state has extensive control over the retirement system, state law imposes requirements concerning investment of and custody over the retirement system's funds, and the members of the system's board are either appointed by the governor or are state officials).

**Conclusion**

Although the State is not a party to this action for purposes of the federal rules of civil procedure, the State, the ERB, and the SIC are all real parties in interest in this case. Furthermore, the ERB and the SIC are arms of the State rather than political subdivisions. As a result there is no basis for exercising diversity jurisdiction over this case, and it will be remanded to the state court from which it was removed.

Dated this 9th day of November, 2009.

*Bruce D. Black*
BRUCE D. BLACK
United States District Judge